LEE BLANCHARD, Appellant v. RENE BLANCHARD, Respondent.

No. 22867

October 23, 1992 839 P.2d 1320

*Mahan & Ellis*, Las Vegas, for Appellant.

*Jimmerson, Davis & Santoro* and *Radford J. Smith*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### THE FACTS

Appellant Lee Blanchard filed a complaint to divorce her husband, respondent Rene Blanchard, on September 13, 1989. A decree of divorce was entered on June 20, 1991. The marital property was distributed pursuant to a property settlement agreement ("agreement"), executed by the parties on May 30, 1991. The agreement was incorporated by reference into the divorce decree. A financial analysis listing the parties' assets and their approximate value was prepared by respondent ("financial statement") and incorporated by reference into the agreement. The property appears to have been divided in a near equal fashion pursuant to the values included in the financial statement. However, the parties expressly acknowledged that the purpose of the financial statement was to disclose all community assets and that the accompanying valuations were not "relied on by the parties."

On August 23, 1991, appellant filed a complaint against respondent to rescind the agreement due to alleged intentional misrepresentations regarding certain community assets. Specifically, appellant disputes the existence and valuation of the following assets:

(a) *Florida real property ("Florida property")*: The agreement gave appellant "[t]he one (1) acre lot in Florida, free and clear of all liens and encumbrances." The Florida property was valued at $10,000.00. However, appellant later discovered that

the Florida property "had been forfeited to the State in 1986 for failure to pay taxes." Thus, there was no Florida property as represented by the agreement.

(b) *Valley Investment Corporation Pension Plan ("pension plan"):* The agreement provided that appellant would receive her vested portion of the pension plan "in the approximate amount of $44,100.00 in cash." Appellant later learned that her vested portion was actually only about $29,000.00.

(c) *Dunes Oil Investors & Salmon River Sheelite Corporation stock:* Appellant was awarded 100 percent of the marital interest in Dunes Oil Investors, with a represented value of $400.00, and 100 percent of the martial interest in Salmon River Sheelite Corporation stock, with a represented value of $1,800.00. Appellant claims that the stocks are worthless.

(d) *West Sahara Partners ("Sahara investment"):* Respondent received the Sahara investment. Although the financial statement depicts this asset to be worth $150,000.00, appellant alleges that respondent orally "represented that the [Sahara investment] . . . was worthless" and subsequently sold it at a profit.

On September 17, 1991, respondent filed a NRCP 12(b)(5) motion to dismiss. Following a hearing on November 19, 1991, the motion was granted.

In considering a NRCP 12(b)(5) motion to dismiss, a court must accept the allegations set forth in the complaint as true. Northern Nev. Ass'n Injured Workers v. SIIS, 107 Nev. 108, 807 P.2d 728 (1991); Hynds Plumbing v. Clark Co. Sch. Dist., 94 Nev. 776, 587 P.2d 1331 (1978). A trial court is obligated to "construe the pleadings liberally and draw every fair intendment in favor of the plaintiff." Capital Mortgage Holding v. Hahn, 101 Nev. 314, 315, 705 P.2d 126, 126 (1985) (citations omitted). A complaint should not be dismissed for failure to state a claim for relief "unless it appears beyond a doubt that the plaintiff could prove no set of facts which, if accepted by the trier of fact, would entitle him to relief." Edgar v. Wagner, 101 Nev. 226, 228, 699 P.2d 110, 112 (1985) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Respondent maintains that appellant failed to state a claim for relief because she cannot show justifiable reliance. We disagree. For reasons discussed below, we hold that it was error to dismiss appellant's complaint.

## DISCUSSION

Appellant's action is for intentional misrepresentation, which imposes a burden on the plaintiff to show the following elements:

that the defendant made a *false representation* to him, *with knowledge or belief* that the representation was *false* or without a sufficient basis for making the representation. Further, the plaintiff must establish that the defendant *intended to induce the plaintiff to act or refrain from acting* on the representation, and that the plaintiff *justifiably relied* on the representation. Finally, the plaintiff must establish that he was *damaged* as a result of his reliance.

Epperson v. Roloff, 102 Nev. 206, 210-11, 719 P.2d 799, 802 (1986) (emphasis added) (citations omitted); *see also* Collins v. Burns, 103 Nev. 394, 741 P.2d 819 (1987).

In order to establish justifiable reliance, the plaintiff is required to show the following:

"The false representation *must have played a material and substantial part in leading the plaintiff to adopt his particular course;* and when he was unaware of it at the time that he acted, or it is clear that he was not in any way influenced by it, and would have done the same thing without it for other reasons, his loss is not attributed to the defendant."

Lubbe v. Barba, 91 Nev. 596, 600, 540 P.2d 115, 118 (1975) (quoting Prosser, Law of Torts, 714 (4th ed. 1971)) (emphasis added). The issue of whether a party has met the elements of intentional misrepresentation is generally a question of fact. *Epperson*, 102 Nev. at 212, 719 P.2d at 803.

Appellant charges that respondent made several misrepresentations relating to the disputed property which were intended to cause her "to believe and rely on them so that the plaintiff would compromise and settle the pending action." Appellant further asserts that "had she known the actual facts, and that the representations of defendant were not true, she would not have entered into the aforementioned property settlement agreement but would have taken the matter to trial."

The Florida property was clearly not part of the marital estate, because it had been forfeited six years earlier for non-payment of taxes. "[A] defendant may be found liable for misrepresentation even when the defendant does not make an express misrepresentation, but instead makes a representation which is misleading because it *partially suppresses or conceals information." Epperson,* 102 Nev. at 212-13, 719 P.2d at 803 (citations omitted) (emphasis added). The mere fact that the financial statement misrepresented the existence of the Florida property, by itself, supports appellant's claim for relief.

Respondent seeks refuge in provisions in the agreement which provide that the appellant did not rely on the values provided in the financial statement or on any other representations made by respondent.[1] However, integration clauses do not bar claims for misrepresentation. *Epperson,* 102 Nev. at 211, 719 P.2d at 802 (citations omitted). Likewise, waiver clauses cannot bar a misrepresentation claim.

Respondent further argues that "a logical reading" of the language of the agreement "indicates that [appellant] made an independent investigation of the values of the various properties of the parties."[2] Generally, a plaintiff making "an independent investigation will be charged with knowledge of facts which reasonable diligence would have disclosed. Such a plaintiff is deemed to have relied on his own judgment and not on the defendant's representations." *Id.* at 211, 719 P.2d at 803 (citing Freeman v. Soukup, 70 Nev. 198, 265 P.2d 207 (1953)). However, we also recognize that "an independent investigation will *not* preclude reliance *where the falsity of the defendant's statements is not apparent from the inspection, where the plaintiff is not competent to judge the facts without expert assistance, or where the defendant has superior knowledge about the matter in issue." Id.* at 211-12, 719 P.2d at 803 (emphasis added) (citations omitted). Moreover, the issue of whether an independent investigation was made presents a question of fact which may not be dispensed of as a matter of law. *See id.* at 212, 719 P.2d at 803.

Respondent claims that appellant could have easily investigated

---

[1]Paragraph 2 provides the following:

> 2. *Financial Statement.* Attached hereto and incorporated herein by this reference is a copy of the most recent financial statement (balance sheet) prepared by Don Pitchford, CPA, on behalf of [Rene]. [Rene] represents that this statement contains a complete description of the parties' assets, community and separate, and acknowledges that it forms the basis for this agreement. *The value attached to each asset, as contained in the financial statement, has not been relied upon by the parties, but [Rene's] representation that all of the assets have been disclosed has been relied upon by [Lee].* (Emphasis added.)

Paragraph 12 provides the following:

> 12. *Disclosure:* Each of the parties expressly certifies that each of them has entered into this agreement upon mature consideration and upon the advice of separate counsel; that no representations of fact have been made by either party to the other except as herein expressly set forth; and that this agreement is fair and reasonable.

[2]We note, however, that the record does not reveal any evidence of the appellant's involvement in an independent investigation.

the title of the Florida property and the respective values of the other disputed property assets without the aid of an expert. However, the marital estate was comprised of many assets and the record strongly suggests that respondent had superior knowledge and control of those assets.[3] In addition, it is not at all clear whether appellant was competent to judge the facts without the assistance of experts. Thus, appellant is still capable of showing justifiable reliance despite respondent's claim that she made a reasonable investigation.

A party is not under a duty to make a reasonable investigation unless "the recipient has information which would serve as a danger signal and a red light to any normal person of his intelligence and experience." *Collins,* 103 Nev. at 397, 741 P.2d at 821 (citations omitted). The record is void of any obvious facts which would place a reasonable person on notice that respondent may have withheld information or otherwise made erroneous representations to appellant. Specifically, there is no evidence which might indicate that appellant had reason to suspect that the Florida property was no longer a part of the marital estate. Since appellant accepted the Florida property as part of the property settlement, she clearly relied on respondent's representation that it was part of the marital estate and was damaged as a result.

We have studied the complaint and conclude that it is sufficient to defeat a NRCP 12(b)(5) motion to dismiss. Appellant is entitled to argue before a trier of fact that the representations or omissions by respondent were calculated to mislead her into accepting marital property with little or no value.

Accordingly, we reverse the judgment, with direction that respondent assert his defenses by a responsive pleading.

---

[3]Respondent prepared the financial statement and the agreement appears to have been prepared primarily, if not entirely, by respondent as well. Appellant was apparently completely unaware of the status of the Florida property or the values of the other assets in dispute. "'[I]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language.'" Williams v. Waldman, 108 Nev. 466, 836 P.2d 614 (1992) (quoting Jacobson v. Sassower, 489 N.E.2d 1283, 1284 (N.Y. 1985)).